UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

JOSHUA M. McKIBBIN AND  Case No.: 15-04094
EMILY J. McKIBBIN,  Chapter 12 - Filed: 07/20/2015

    Debtors.
_____/ /

## DEBTORS' CHAPTER 12 PLAN

**NOW COME** Joshua M. and Emily J. McKibbin, Debtors ("Debtors"), by and through their attorneys, Rayman & Knight, and for their Chapter 12 Plan ("Plan"), say as follows:

### ARTICLE I
### INTRODUCTION

Joshua and Emily McKibbin, ages 36 and 33, respectively, reside in Hillsdale, Michigan with two children. At one time, through an LLC, McKibbin Farms, LLC, Joshua McKibbin farmed a significant number of acres. Mr. and Mrs. McKibbin previously filed a Chapter 12 in 2012, which was dismissed on June 6, 2015. They filed these present proceedings on July 20, 2015 with the intent of selling a large portion of their farm equipment, providing for payment of priority taxes, a special voluntary class for debts deemed to be non-dischargeable and providing a dividend to unsecured creditors.

### ARTICLE II
### PAYMENTS TO TRUSTEE AND TRUSTEE'S COMPENSATION

The Debtors shall pay $2,000.00 per month for 60 months into the Plan. The Trustee shall retain and receive, as his fee under this Chapter 12 Plan, the percentage permitted by law.

## ARTICLE III
## SUMMARY OF PLAN

The Debtors' farming operation has been intertwined with the assets of Joshua McKibbin's grandmother, Marilyn McKibbin. Joshua McKibbin entered into a lease with option to purchase 195 acres with Marilyn McKibbin in 2005. The purchase/option price was $800.00 per acre, which now does not leave significant equity in the properties as a result of mortgages granted on said properties. During the course of time (and with Marilyn's consent), the 195 acres was pledged to creditors as set forth below:

- GreenStone - which also holds a first mortgage on the McKibbin home, has a mortgage on 39 acres owned by Marilyn McKibbin. GreenStone is owed approximately $64,000.00;

- The Farm Service Agency ("FSA") - which also holds a lien on Mr. McKibbin's equipment and other personal property, having a value of about $120,000.00, has a mortgage on 75 acres owned by Marilyn McKibbin. FSA is owed approximately $248,600.00;

- The Robert P. Miller Revocable Trust ("Trust") - holds a mortgage on 75 acres. The Trust is owed approximately $156,000.00.

The Plan contemplates the following:

- The home and 39 acres ("Home Farm") shall be retained by the Debtors who shall pay GreenStone its monthly payment as a Class 7 creditor. The Debtors shall also pay Marilyn McKibbin the option price at such time as is mutually agreed by the parties;

- A substantial portion of the equipment held by the FSA shall be sold with the proceeds, after payment of *ad valorem* taxes, being paid to the FSA;

2

- The mortgage held by the Trust shall be paid in full with monthly payments of $1,250.00 with interest at the contract rate and paid outside the Chapter 12 Plan;

- A fund, referred to as "Pool I", shall be established by the Trustee for the benefit of the estate and its creditors. The Debtors shall pay $120,000.00 at the rate of $2,000.00 per month for 60 months into Pool I. Payments shall be distributed by the Trustee in descending priority pursuant to the statutory scheme of 11 U.S.C. §§507 & 726; and

- A fund, referred to as "Pool II", shall be established in the amount of $30,000.00 from crop proceeds that would otherwise payable to Wagler. Proceeds from Pool II shall be paid to creditors holding non-dischargeability judgments on a *pro rata* basis consenting to participate only (funds payable to creditors in Pool II shall be in addition to said creditor's *pro rata* claim of Pool I).

## ARTICLE IV
## CLASSIFICATION OF CLAIMS

**Class 1.** **Claims Entitled to Priority under 11 U.S.C. §507(a)(2).** Claims in this Class consists of allowable administrative expenses, pursuant to 11 U.S.C. §507(a)(2). This Class consists of attorney fees, Trustee's fees and/or any other outstanding post-petition invoices or charges owed by the Debtors. The Debtors estimate that the professional fees required to be paid to the attorney for the Debtors shall be approximately an additional $10,000.00 (over and above the retainer paid on behalf of the Debtors). There may be additional administrative creditors who file claims or seek relief and the Debtors shall pay those claims (if any) pursuant to the applicable provisions of the Bankruptcy Code.

**Class 2.** **Secured Claim of Agricredit Acceptance, LLC.** This Class consists of the claim due for a certain tractor and grain cart upon which this creditor holds a PMSI. The

3

Debtors' best estimate as to the amount owed to this Class is $42.645.11.

**Class 3.** **Secured Claim of Credit Acceptance Corp.** This Class consists of a claim due to Credit Acceptance Corp. for a PMSI in a 2008 Pontiac G6. It is owed the sum of $10,630.60.

**Class 4.** **Secured Claim of Deere & Company.** This Class consists of a claim due to Deere & Company. Relief from stay had previously been granted to this Class. It shall be treated as a Class 12 creditor.

**Class 5.** **FSA.** This Class consists of the claim of the FSA for a farm loan. This creditor holds a blanket security interest on all personal property and a lien on 75 acres owned by Marilyn McKibbin. The Debtors' best estimate of the amount owed is $248,640.29.

**Class 6.** **Generic Leasing & Finance.** This Class consists of the claim of Generic Leasing & Finance in a 1969 Western Star Truck which lien was avoided in the Debtors' previous case. The Debtors' best estimate of the amount owed is $7,354.15.

**Class 7.** **GreenStone.** This Class consists of the secured claim of GreenStone, which holds a first mortgage on the Debtors' first mortgages at 9375 Steamburg Road. It also holds a mortgage on 39 acres owned by Marilyn McKibbin.

**Class 8.** **Priority Taxes.** This Class consists of any tax entitled to priority under 11 U.S.C. §507, which the Debtors estimate to be the Internal Revenue Service in the approximate amount of $5,000.00 and the State of Michigan in the approximate amount of $10,000.00. The amount of said claims shall be governed by the claims' allowance process such that the amount owed to each respective creditor shall be governed by its allowed claim.

**Class 9.** **Lancaster Parts & Equipment.** This Class consists of the claim of Lancaster Parts & Equipment in a Dion Chopper Head which lien was avoided in the Debtors'

4

previous case.  The Debtors' best estimate of the amount owed is $26,000.00.

**Class 10.** **Matco Tools.** This Class consists of the claim of Matco Tools which holds a PMSI in tools. The Debtors' best estimate of the amount owed is $3,814.15.

**Class 11.** **Secured Claim of Wagler.** This Class consists of the secured debt of Wagler, which holds a first lien perfected security interest on 2015 crops.

**Class 12.** **General unsecured Creditors (not including creditors holding non-dischargeability claims that choose to be treated as Class 13 Claimants).** This Class consists of the general unsecured creditors of this estate including claims deemed to be non-dischargeable.

**Class 13.** **Debts of Creditors Holding Non-Dischargeability Judgments Choosing to Participate in this Class.** This Class consists of those creditors whose debts have been non-dischargeable who choose to participate in this Class.

## ARTICLE V
## TREATMENT OF CLAIMS

**Class 1.** Claims in this class shall be paid as follows:

> Professional fees and Trustee's fees shall be paid through the Chapter 12 Plan out of the first funds received and distributed by the Trustee.  Other administrative expenses (including Debtors' post-petition vendors) shall be paid pursuant to business terms.

**Class 2.** Agricredit Acceptance, LLC shall either receive relief from stay to repossess its equipment or at its option, the Trustee shall sell said collateral with the proceeds being payable to said creditor after payment of the Trustee's fees.  Any balance shall be treated as a Class 12 creditor.

**Class 3.** Credit Acceptance Corp. shall be paid as fully secured with monthly payments of $319.00 with interest of 6% outside the Plan.

**Class 4.** Deere & Company has received relief from the automatic stay to repossess its equipment. Its balance shall be treated as a Class 12 creditor.

**Class 5.** This claim of FSA, in the approximate amount of $248,640.29, shall be treated as (i) the Debtors shall provide a list of non-essential farm equipment upon which this creditor holds a lien. The Trustee shall sell said equipment with the proceeds being payable to the FSA, after payment of *ad valorem* taxes and Trustee's fees; (ii) the remaining balance owed to the FSA shall be reamortized on a 20 year amortization with interest at 1.5% per annum and a monthly payment of $725.00 (based upon the sale of $100,000.00 of equipment, net after expenses of sale), outside the Plan with the essential equipment and the real estate remaining as collateral. The actual amount of the monthly payment shall be based upon the amortization and interest rate. The amount of the claim shall be the net amount after sale of the equipment.

**Class 6.** The Generic Leasing & Finance lien will be avoided and the property shall be sold by the Trustee. Proceeds shall be paid into Pool I. This creditor's balance shall be treated as a Class 12 creditor.

**Class 7.** GreenStone is owed the approximate sum of $64,000.00. This creditor shall be treated as fully secured and paid in accordance with a certain Stipulation for Adequate Protection. The Debtors shall pay $393.44 per month with interest at the contract rate outside the Plan.

**Class 8.** Taxes entitled to priority shall be paid in full as a priority claim by the Trustee from Pool I.

**Class 9.** The Lancaster Parts & Equipment lien will be avoided and the property shall be sold by the Trustee. Proceeds shall be paid into Pool I. This creditor's balance shall be treated as a Class 12 creditor.

6

**Class 10.**     Matco Tools will be paid its monthly payment in the amount of $100.00 with interest at 5% by the Trustee (payment in addition to the $2,000.00 per month Plan designated to Pool I).

**Class 11.**     Wagler shall be paid from crop proceeds when harvested or as agreed upon by the parties but shall re-loan the Debtors the sum of $30,000.00 of said proceeds to fund Pool II.  This creditor shall be granted an all asset lien and mortgage, subordinate to any remaining PMSI interest and other mortgages in the Debtors' real and personal assets for the repayment of monies owed by the funding of Pool II.  Payment shall be as agreed upon between the Debtors and this creditor but no less than $539.06 per month with interest at 3%.

**Class 12.**     General unsecured creditors, including those holding non-dischargeability claims, shall be paid from Pool I, after payment of administrative and priority claims consistent with the statutory priorities provided in 11 U.S.C. §§507 & 726.

**Class 13.**     Creditors holding non-dischargeability judgments choosing to participate in this Class shall be paid from proceeds of Pool II, which shall be established in the amount of $30,000.00 from crop proceeds that would otherwise be payable to Wagler.  Proceeds from Pool II shall be paid to creditors (who consent) holding non-dischargeability judgments on a *pro rata* basis.  To the extent that any creditor with the privilege of participating in Pool II does not voluntarily so participate, its debt shall be treated as a general unsecured debt and its non-dischargeability judgment shall remain in effect. To the extent that any such creditor participates in Pool II, it shall be paid its *pro rata* portion of the Pool and its debts shall be deemed discharged.

## ARTICLE VI
## REVESTING OF TITLE TO PROPERTY

Title to property of the estate, subject to existing liens which are valid in Bankruptcy,

shall vest in the Debtors upon confirmation of this Plan.

## ARTICLE VII
## EFFECTIVE DATE OF PLAN

The effective date of the Plan shall be the date after which the Order confirming this Plan is no longer appealable.

## ARTICLE VIII
## SALE OR PLEDGE OF PROPERTY

The Debtors may, at their option, sell or pledge property, subject to notice with opportunity for objection, in order to:

a. Prepay any obligation required under this Plan;

b. Make up any "short fall" of any required payment(s) under this Plan;

## ARTICLE IX
## MODIFICATION OF THE PLAN

The Debtors may propose amendments or modification of this Plan at any time prior to confirmation. After confirmation, the Debtors may, with approval of the Court, remedy any defect or omission, or reconcile any inconsistencies in the Plan. The Debtors reserve his right to seek modification of the Plan after confirmation pursuant to 11 U.S.C. §1229.

## ARTICLE X
## COMPLIANCE WITH CONFIRMATION REQUIREMENTS

**Compliance with the Laws and Good Faith.** The Debtors believe that the Plan complies with all provisions of Chapter 12 and any other applicable provisions of the Bankruptcy Code; that the Plan has been proposed in good faith and not by any means forbidden by law, and that all fees, charges or amounts required to be paid from confirmation have been paid.

**Feasibility.** The Debtors believe that he will be able to make all payments required by the Plan. A payment projection summary and budget for the term of Plan is attached as Exhibit

"A".

**Chapter 7 Comparison.**  Based on the values of the Debtors' assets and the amount of secured and unsecured claims, the Debtors believe that the value, as of the effective date of the Plan, of that property to be distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.  The Debtors believe that the return to general unsecured creditors under Chapter 7 would be minimal, after taking into account the forced liquidation value of the Debtors' assets and the costs of liquidation. A liquidation analysis is attached as Exhibit "B".

## ARTICLE XI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Land Contract with the Paul and Joyce Miller Revocable Trust on the 1700 E. Montgomery Road shall be assumed.

The Lease with Option with Marilyn McKibbin shall be assumed and paid as per agreement between the parties.

## ARTICLE XII
## MISCELANEOUS PROVISIONS

Upon payment of all creditors choosing to participate in Pool II, debts owing to those creditors shall be deemed discharged.  Upon completion of the Plan, the Debtors shall otherwise receive their Discharge under Chapter 12.

Dated: October 16, 2015

_____
Joshua M. McKibbin, Debtor

Dated: October 16, 2015

_____
Emily J. McKibbin, Debtor

**RAYMAN & KNIGHT**
Attorneys for Debtors

Dated: October 16, 2015     By: _____
Steven L. Rayman (P30882)

BUSINESS ADDRESS:
141 East Michigan Avenue, Suite 301
Kalamazoo, MI 49007
Telephone: (269) 345-5156

| McKibbin Projections | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| Grain Sales | 150,000 | 142,500 | 142,500 | 142,500 | 142,500 | 142,500 |
| Ag Programs | 0 | 0 | 0 | 0 | 0 | 0 |
| Crop Insurance | 0 | 0 | 0 | 0 | 0 | 0 |
| Custom work | 240,000 | 240,000 | 240,000 | 240,000 | 240,000 | 240,000 |
| Total | 390,000 | 382,500 | 382,500 | 382,500 | 382,500 | 382,500 |
| **Expenses** | | | | | | |
| Car and truck | 10,000 | 10000 | 10000 | 10000 | 10000 | 10000 |
| Chemicals | 25000 | 30000 | 30000 | 30000 | 30000 | 30000 |
| Conservation | 0 | 0 | 0 | 0 | 0 | 0 |
| Depreciation | 0 | 0 | 0 | 0 | 0 | 0 |
| Employee benefit | 0 | 0 | 0 | 0 | 0 | 0 |
| Feed | 0 | 0 | 0 | 0 | 0 | 0 |
| Fertilizer | 25000 | 27000 | 27000 | 27000 | 27000 | 27000 |
| Freight | 0 | 0 | 0 | 0 | 0 | 0 |
| Gas and Fuel | 10,000 | 10000 | 10000 | 10000 | 10000 | 10000 |
| Insurance | 10000 | 10000 | 10000 | 10000 | 10000 | 10000 |
| Interest | 0 | 0 | 0 | 0 | 0 | 0 |
| Labor hired | 120000 | 120000 | 120000 | 120000 | 120000 | 120000 |
| Rent | 0 | 0 | 0 | 0 | 0 | 0 |
| Repairs | 10000 | 10000 | 10000 | 10000 | 10000 | 10000 |
| Seed | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 |
| Storage | 0 | 0 | 0 | 0 | 0 | 0 |
| Supplies | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 |
| Taxes | 0 | 0 | 0 | 0 | 0 | 0 |
| Utilities | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 |
| Taxes | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 |
| Family Living | 54600 | 54600 | 54600 | 54600 | 54600 | 54600 |
| Farm Paymer P Miller | 14400 | 14400 | 14400 | 14400 | 14400 | 14400 |
| Farm paymer Robt Miller | 15,000 | 15000 | 15000 | 15000 | 15000 | 15000 |
| Greenstone | 4800 | 4800 | 4800 | 4800 | 4800 | 4800 |
| FSA | 8700 | 8,700 | 8700 | 8700 | 8700 | 8700 |
| Menno Payment | 6480 | 6480 | 6480 | 6480 | 6480 | 6480 |
| Income Tax | 7500 | 7500 | 7500 | 7500 | 7500 | 7500 |
| | 351,480 | 358480 | 358480 | 358480 | 358480 | 358480 |
| Net | 37500 | 24020 | 24020 | 24020 | 24020 | 24020 |

**EXHIBIT A**

Fill in this information to identify your case:

Debtor 1  Joshua M. McKibbin
         First Name   Middle Name   Last Name

Debtor 2  Emily J. McKibbin
(Spouse, if filing) First Name   Middle Name   Last Name

United States Bankruptcy Court for the: Western District of MI

Case number
(If known) _____

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13 expenses as of the following date:
_____
MM / DD / YYYY

☐ A separate filing for Debtor 2 because Debtor 2 maintains a separate household

Official Form B 6J

# Schedule J: Your Expenses    12/13

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Your Household

1. Is this a joint case?

   ☐ No. Go to line 2.
   ☒ Yes. Does Debtor 2 live in a separate household?
      ☒ No
      ☐ Yes. Debtor 2 must file a separate Schedule J.

2. Do you have dependents?

   Do not list Debtor 1 and Debtor 2.
   Do not state the dependents' names.

   ☐ No
   ☒ Yes. Fill out this information for each dependent...........

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| Daughter | 7 | ☐ No  ☒ Yes |
| Son | 4 | ☐ No  ☒ Yes |
|  |  | ☐ No  ☐ Yes |
|  |  | ☐ No  ☐ Yes |
|  |  | ☐ No  ☐ Yes |

3. Do your expenses include expenses of people other than yourself and your dependents?

   ☒ No
   ☐ Yes

## Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form B 6I.)

|  | Your expenses |
|---|---|
| 4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot.   4. | $ 0.00 |
| If not included in line 4: |  |
| 4a. Real estate taxes   4a. | $ 200.00 |
| 4b. Property, homeowner's, or renter's insurance   4b. | $ 100.00 |
| 4c. Home maintenance, repair, and upkeep expenses   4c. | $ 150.00 |
| 4d. Homeowner's association or condominium dues   4d. | $ 0.00 |

Official Form B 6J                Schedule J: Your Expenses                page 1

Debtor 1  __Joshua M. McKibbin__
         First Name   Middle Name   Last Name

Case number (*if known*)_____

**Your expenses**

5. Additional mortgage payments for your residence, such as home equity loans   5. $ 0.00

6. Utilities:
   - 6a. Electricity, heat, natural gas   6a. $ 300.00
   - 6b. Water, sewer, garbage collection   6b. $ 50.00
   - 6c. Telephone, cell phone, Internet, satellite, and cable services   6c. $ 500.00
   - 6d. Other. Specify: _____   6d. $ 0.00

7. Food and housekeeping supplies   7. $ 800.00

8. Childcare and children's education costs   8. $ 0.00

9. Clothing, laundry, and dry cleaning   9. $ 100.00

10. Personal care products and services   10. $ 50.00

11. Medical and dental expenses   11. $ 100.00

12. Transportation. Include gas, maintenance, bus or train fare.
    Do not include car payments.   12. $ 400.00

13. Entertainment, clubs, recreation, newspapers, magazines, and books   13. $ 150.00

14. Charitable contributions and religious donations   14. $ 100.00

15. Insurance.
    Do not include insurance deducted from your pay or included in lines 4 or 20.
    - 15a. Life insurance   15a. $ 100.00
    - 15b. Health insurance   15b. $ 800.00
    - 15c. Vehicle insurance   15c. $ 150.00
    - 15d. Other insurance. Specify:_____   15d. $ 0.00

16. Taxes. Do not include taxes deducted from your pay or included in lines 4 or 20.
    Specify: __Property Taxes__   16. $ 100.00

17. Installment or lease payments:
    - 17a. Car payments for Vehicle 1   17a. $ 300.00
    - 17b. Car payments for Vehicle 2   17b. $ 0.00
    - 17c. Other. Specify:_____   17c. $ 0.00
    - 17d. Other. Specify:_____   17d. $ 0.00

18. Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form B 6I).   18. $ 0.00

19. Other payments you make to support others who do not live with you.
    Specify:_____   19. $ 0.00

20. Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*
    - 20a. Mortgages on other property   20a. $ 0.00
    - 20b. Real estate taxes   20b. $ 0.00
    - 20c. Property, homeowner's, or renter's insurance   20c. $ 0.00
    - 20d. Maintenance, repair, and upkeep expenses   20d. $ 0.00
    - 20e. Homeowner's association or condominium dues   20e. $ 0.00

Official Form B 6J          Schedule J: Your Expenses          page 2

Debtor 1    Joshua M. McKibbin
            First Name    Middle Name    Last Name

Case number *(if known)*_____

21. Other. Specify: __Horse Feed; Pet; Gifts_____    21.  +$ _____250.00_____

22. **Your monthly expenses.** Add lines 4 through 21.
    The result is your monthly expenses.                  22.  $ _____4,700.00_____

23. **Calculate your monthly net income.**

    23a. Copy line 12 (*your combined monthly income*) from *Schedule I*.    23a.  $ _____0.00_____

    23b. Copy your monthly expenses from line 22 above.    23b.  –$ _____4,700.00_____

    23c. Subtract your monthly expenses from your monthly income.
         The result is your *monthly net income*.          23c.  $ _____

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

    For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

    [X] No.
    [ ] Yes.    Explain here:

_[signatures]_    10-16-15

                  10-16-15